# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                              Respondent,<br><br>        v.<br><br>LAMAR HOWARD JEFFRIES,<br><br>                              Appellant. | No.  50636-0-II<br><br>UNPUBLISHED OPINION |

GLASGOW, J. — Lamar Howard Jeffries got into an argument with a Pierce Transit bus driver, and the transit communications center requested law enforcement assistance.  Jeffries then argued with the responding officer, and eventually Jeffries scuffled with the officer, bit the officer's arm, and grabbed onto his gun belt.  The State charged Jeffries with various crimes as a result if this incident.  Jeffries failed to appear in court for a required pretrial conference while he was out on bail.

Jeffries now appeals his convictions for obstruction of a law enforcement officer and bail jumping.[1]  He also appeals certain legal financial obligations imposed as part of his sentence.

---

[1] Jeffries later pleaded guilty to a second bail jumping charge, although he does not appeal the validity of his second bail jumping conviction.

Jeffries argues that the bail jumping to-convict jury instruction omitted an essential element of the offense. In addition, Jeffries argues that the State presented insufficient evidence to convict him of bail jumping and that he received ineffective assistance of counsel affecting both convictions. Finally, Jeffries argues that the sentencing court erred when it ordered him to pay certain legal financial obligations. We affirm Jeffries's convictions for bail jumping and obstruction, but we remand for the trial court to strike the challenged legal financial obligations and associated interest from his judgment and sentence.

FACTS

On Thanksgiving evening 2015, a Pierce Transit bus driver parked his bus while on a break. He closed and secured the doors before he left. When the driver returned, he noticed the bus doors ajar, multiple plastic bags inside, and Jeffries waiting outside the bus. He asked Jeffries not to board parked and unoccupied buses in the future. Jeffries responded with vulgar language and hand gestures. The driver then informed Jeffries that it was the end of his shift, he was taking the bus back to the garage, and that he was not taking passengers at that time.

As Jeffries was leaving, he kicked the bus door, so the driver reported the disturbance to the transit communications center, which notified the sheriff's department. The communications center told the bus driver to return the bus to the garage to avoid further safety concerns.

Pierce County Sheriff's Deputy Michael Csapo responded and contacted Jeffries. Jeffries denied cursing at the driver or kicking the bus. Csapo initially advised Jeffries that he was not under arrest, but he proceeded to write Jeffries a civil citation excluding him from Pierce Transit for a period of time. Jeffries was initially peaceful, but he appeared to be heavily intoxicated. When another bus arrived, he started yelling and cursing at the bus driver. Csapo ordered

Jeffries to stop approaching the bus, but Jeffries ignored him. Csapo placed Jeffries under arrest for unlawful transit conduct and put him, handcuffed, in the back of his car. Even then, Csapo told Jeffries he planned to issue the civil citation and let him go.

Csapo explained to Jeffries the citation and his appeal rights. But when Csapo started the process of releasing Jeffries from the handcuffs, Jeffries refused to cooperate with instructions to put his free hand on top of his head to ensure the officer's safety. According to Csapo, Jeffries then struggled, grabbed onto Csapo's gun belt, and bit Csapo in the arm.

As a result of this incident, the State originally charged Jeffries with one count of third degree assault, one count of unlawful transit conduct, and one count of resisting arrest. The trial court released Jeffries on bail with certain conditions, including that he not violate the law, that he maintain contact with is defense attorney, that he not possess weapons or firearms, that he not consume or possess alcohol or non-prescription drugs, and that he not have hostile contact with law enforcement.

The trial court also entered an order, which Jeffries signed, requiring Jeffries to be "present and report to" courtroom 270 for a pretrial conference on January 12, 2016, at 1:00 p.m. On January 12, the court polled the gallery at 3:10 p.m., and a prosecutor checked the courtroom and hallway, but Jeffries was not present. The trial court entered an order authorizing a bench warrant because it found Jefferies failed to appear as required.

The State then amended the information to add a charge of bail jumping. The amended information also added a charge of obstructing a law enforcement officer and dropped the prior charges of unlawful transit conduct and resisting arrest.

At a subsequent pretrial hearing, Jeffries informed the trial court (with defense counsel present) that he had been diagnosed with post-traumatic stress disorder (PTSD). Jeffries requested a competency evaluation under chapter 10.77 RCW. The trial court considered whether to hold a hearing under chapter 10.77 RCW, but denied the motion for evaluation. The trial court found Jeffries competent to stand trial. The trial court advised Jeffries that, to the extent he wanted to pursue a diminished capacity defense, he should discuss that with defense counsel. The court noted, however, that if Jeffries was under the influence of drugs or alcohol, "you probably don't get a diminished capacity instruction." 1 Verbatim Report of Proceedings (VRP) at 9.

At trial, Csapo testified that he had been assigned to the Pierce Transit patrol division for the past six years, and that the division's primary focus was the bus system in and around Pierce County, with an emphasis on the safety of employees and passengers. He testified: "When we first took over the contract in 2009 it was chaotic. There was a lot of crime, a lot of strong-arm robberies, a lot of assaults on the buses. We came in and took over, working full-time focusing on the bus system." 3 VRP at 78. Csapo explained that the strategy worked, they were able to "clean up the [bus] system, and now it functions fairly well." 3 VRP at 79.

The prosecutor asked whether there was a "[d]ifferent kinds of clientele for different types of routes?" Csapo replied:

> We don't have the normal, like in Seattle, you have the people that take the bus to and from work. We don't really have that. . . . [W]e have the infirm[], we have the mentally ill. We have people that have lost their driver's privileges for whatever reason, . . . and we have the elderly. That's primarily our clientele that use the bus system.

4

3 VRP at 79. The prosecutor asked whether the clientele he mentioned were vulnerable on the buses, and Caspo replied: "Well, they're targeted, to be honest, because they're people that can't defend themselves or they're just easy prey for people that look for victims." 3 VRP at 80.

Csapo discussed the division's approach to policing Pierce Transit, which he termed "the theory of broken windows of law enforcement," explaining that "[i]f you fix the little things, the larger events are not allowed to develop and percolate." 3 VRP at 80. He testified that civil infractions excluding people from the bus system for a period of time were their primary way of getting people to change their behavior when they were not complying with transit rules. The total number of civil infractions had declined over recent years.

All of this testimony was elicited as background before Csapo discussed the specific incident involving Jeffries. Defense counsel did not object to any of this background questioning or testimony.

Regarding the charge of bail jumping, the trial court admitted into evidence the order establishing Jeffries's conditions of release. Defense counsel did not object to the admission of this exhibit or seek redaction. Pierce County Deputy Prosecuting Attorney Lloyd Oaks testified that he polled the gallery at 3:10 p.m. on January 12, when Jeffries had been ordered to appear. Oaks testified it is his practice to contact the parties in the gallery and check the hallways to confirm whether someone has appeared. Oaks testified Jeffries did not appear on January 12.

Defense counsel did not argue diminished capacity at trial.

The jury found Jeffries guilty of obstructing a law enforcement officer and bail jumping. The jury could not reach a verdict on the count of third degree assault. The trial court released

Jeffries on bail and ordered him to appear for sentencing on June 3. Jeffries signed another order establishing conditions of release and requiring him to appear on June 3.

On June 3, Jeffries failed to appear for sentencing as required. The court again authorized a bench warrant. After the police arrested Jeffries, the State chose to retry him on the count of third degree assault and added another count of bail jumping for his failure to appear at the sentencing hearing.

During his second round of proceedings, Jeffries again indicated that he wanted to pursue a diminished capacity defense. His newly appointed defense counsel advised the trial court that he did not believe there was "a factual or legal basis to" assert a diminished capacity defense Jeffries said that he wanted to proceed pro se in order to assert diminished capacity

Apparently in order to determine whether Jeffries could competently waive his right to counsel, the trial court ordered a competency evaluation. Julia McLawsen, Ph.D., completed a forensic psychological report. McLawsen opined that Jeffries was competent. The trial court agreed.

Jeffries maintained that he wished to pursue his diminished capacity defense pro se. Defense counsel again advised the trial court that he had counseled Jeffries, "[b]ased upon the general rules of ethics and what I believe I lack in regard to presenting that [diminished capacity] defense, I have expressed to him that I could not pursue that." VRP (July 6, 2017) at 2. Because McLawsen concluded that Jeffries was competent, and because he unequivocally asserted that he wished to proceed pro se, the trial court granted Jeffries's motion to proceed pro se with defense counsel on standby.

Jeffries ultimately pleaded guilty to the additional count of bail jumping, and the State

dropped the third degree assault charge. The trial court found Jeffries was indigent. The trial

court imposed a $200 criminal filing fee and a $100 DNA collection fee.

Jeffries appeals his convictions and sentence on the first count of bail jumping and

obstruction of a law enforcement officer.

## ANALYSIS

### I. TO-CONVICT JURY INSTRUCTION

At trial, the jury was presented with the following instruction on bail jumping:

> [T]o convict the defendant of the crime of bail jumping, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about January 12, 2016, the defendant failed to appear before a court;
> (2) That the defendant was charged with Assault in the Third Degree;
> (3) That the defendant had been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before that court.

Clerk's Papers (CP) at 30. This instruction is modeled after 11A Washington Practice:

Washington Pattern Jury Instructions: Criminal 120.41 (4th ed. 2016) (WPIC). Jeffries argues

that this instruction relieved the State of its burden to prove the essential element that he

knowingly failed to appear "as required," thereby violating his due process rights. Br. of

Appellant at 10-13. We disagree.

As an initial matter, the State argues Jeffries failed to preserve the alleged error because

he failed to object at trial. However, a party may raise for the first time on appeal a manifest

error affecting a constitutional right. RAP 2.5(a)(3). A to-convict instruction "carries with it a

special weight because the jury treats the instruction as a 'yardstick' by which to measure a

defendant's guilt or innocence." *State v. Mills*, 154 Wn.2d 1, 6, 109 P.3d 415 (2005). "The issue

7

of omission of an element from that instruction is of sufficient constitutional magnitude to warrant review when raised for the first time on appeal." *Id*.

We review the sufficiency of a to-convict instruction de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). To convict a defendant of bail jumping under RCW 9A.76.170(1), the State must prove beyond a reasonable doubt that the defendant (1) "was held for, charged with, or convicted of a particular crime;" (2) "was released by court order or admitted to bail with the requirement of a subsequent personal appearance;" and (3) "knowingly failed to appear as required." *Williams*, 162 Wn.2d at 183-84.

"Due process requires the trial court to accurately instruct the jury on every element required to convict a defendant of the crimes alleged." *State v. Tyler*, 191 Wn.2d 205, 216, 422 P.3d 436 (2018). In the context of challenges to other types of instructions, our Supreme Court has recognized that a trial court can consider the context of the jury instructions as a whole. *State v. Johnson*, 180 Wn.2d 295, 306, 325 P.3d 135 (2014). But where a to-convict instruction is challenged, we must not look to other jury instructions to supplement a defective to-convict instruction. *State v. Sibert*, 168 Wn.2d 306, 311, 230 P.3d 142 (2010).

The State argues that *State v. Hart* governs this appeal. 195 Wn. App. 449, 455-56, 381 P.3d 142 (2016), *review denied*, 187 Wn.2d 1011 (2017), *abrogated on other grounds by State v. Burns*, --- Wn.2d ---, 438 P.3d 1183 (2019). Hart argued, as Jeffries does, that his bail jumping to-convict instruction relieved the State of its burden to prove the element that he had failed to appear at a court hearing "as required." *Id*. We disagreed, reasoning that

> the trial court's bail jumping to-convict instruction, which mirrors the to-convict instruction in 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 120.41 at 517 (3d ed. 2008), required the State to prove beyond a reasonable doubt that Hart had been released by court order or admitted to bail with

8

knowledge *of the requirement* of a subsequent personal appearance before that court.

195 Wn. App. at 456 (record citation omitted). We concluded, therefore, that "the trial court's to-convict instruction included the element of a *required* subsequent appearance." *Id.* As a result, the instruction was proper. *Id.*

We decline to depart from *Hart*, and we apply its reasoning to this case. As in *Hart*, the trial court here modeled the to-convict instruction on WPIC 120.41. Jeffries's to-convict instruction required his "knowledge of the requirement of a subsequent personal appearance before that court." CP at 30. Here, as in *Hart*, the to-convict instruction was not misleading and it properly informed the jury of all essential elements of bail jumping, including that Jeffries was required to appear but did not.

To the extent that Jeffries also argues that it is inherently improper not to recite precise statutory language in a jury instruction, we disagree. An instruction that uses statutory language is "appropriate only if the statute is applicable, reasonably clear, and not misleading." *Bell v. State*, 147 Wn.2d 166, 177, 52 P.3d 503 (2002); *see also State v. Schierman*, 192 Wn.2d 577, 651, 415 P.3d 106 (2018) ("A jury instruction is proper if it permits each party to argue its theory of the case, is not misleading, and properly informs the jury of the applicable law."). Omitting the words—"as required"—from the element of the to-convict jury instruction asking whether "the defendant failed to appear before a court" did not render the instruction legally erroneous, so long as the to-convict instruction conveyed the requirement in another way. *Hart*, 195 Wn. App. at 456.

We hold the challenged to-convict instruction did not relieve the State of its burden to prove all of the essential elements of bail jumping and, therefore, it did not violate Jeffries's due process rights.

## II. SUFFICIENCY OF THE EVIDENCE

Jeffries argues that the State did not present sufficient evidence to convict him of bail jumping because there was no evidence that he was absent from the courtroom at the specific time that he had been ordered to appear. We disagree.

The standard for evaluating the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *Hart*, 195 Wn. App. at 456. All reasonable inferences from the evidence must be drawn in favor of the State. *Id.* Circumstantial evidence and direct evidence are equally reliable. *Id.* We defer to the jury's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness of evidence. *Id.*

Jeffries relies on *State v. Coleman*, 155 Wn. App. 951, 963-64, 231 P.3d 212 (2010), to argue that the State must prove beyond a reasonable doubt that he was absent at the specific time at which he was notified the hearing would occur. But *Coleman* presented different facts, and this case is more like *Hart*, where we found sufficient evidence of bail jumping.

In *Coleman*, the trial court polled the gallery for the defendant at 8:30 a.m., *before* 9:00 when he was actually ordered to appear. 155 Wn. App. at 963-64. Division One of our court concluded that the State presented insufficient evidence to prove bail jumping in that case. In contrast, in *Hart*, we held that the bail jumping statute does not require the State to present evidence that a defendant was not in the court precisely at the specified time he was ordered to

appear. 195 Wn. App. at 457-58. We concluded that the bail jumping statute is satisfied if (1) the trial court polls for the defendant *after* the specified time he was ordered to appear, and (2) the defendant is not present in the courtroom at that time. *See id*.

Here, the State presented documentary evidence, including a number of exhibits establishing that Jeffries was directed to appear at 1:00 p.m. on January 12 in courtroom 270. He signed the order directing him to appear. And the State presented testimony that the prosecutor polled for the defendant in the courtroom and in the hallways after 1:00 p.m. Any rational trier of fact could have viewed this evidence and found that the elements of bail jumping had been proved beyond a reasonable doubt.

Jeffries finally argues that there was no evidence that the poll was taken in room 270, where he was ordered to appear. But the prosecutor testified that he was assigned to that courtroom.

After viewing the evidence in the light most favorable to the State, we conclude that the State presented sufficient evidence to convict Jeffries of bail jumping.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Jeffries argues he received ineffective assistance of counsel. We disagree.

Criminal defendants have a constitutional right to effective assistance of counsel. U.S. CONST., amends. VI, XIV; WASH. CONST., art. I, §§ 3, 22. To prove ineffective assistance, the defendant must show that (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him to the extent that there is a reasonable probability the deficient performance deprived him of a fair trial. *State v. Humphries*, 181 Wn.2d 708, 719, 336 P.3d 1121 (2014) (applying *Strickland v.*

*Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Failure to establish

either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

We consider the totality of the evidence on the record. *Strickland*, 466 U.S. at 695; *State*

*v. Townsend*, 142 Wn.2d 838, 843, 15 P.3d 145 (2001).

> Judicial scrutiny of counsel's performance must be highly deferential, and a fair
> assessment of attorney performance requires that every effort be made to eliminate
> the distorting effects of hindsight, to reconstruct the circumstances of counsel's
> challenged conduct, and to evaluate the conduct from counsel's perspective at the
> time.

*Strickland*, 466 U.S. at 669. The defendant faces a strong presumption that counsel's

representation falls within the broad range of reasonably effective assistance. *Strickland*, 466

U.S. at 689; *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Legitimate trial strategy or

tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*,

166 Wn.2d 856, 863, 215 P.3d 177 (2009).

A.    Failure to Object to Particular Portions of Csapo's Testimony

Jeffries first argues he received ineffective assistance because counsel failed to object to

certain portions of Csapo's testimony that he claims were inadmissible and highly prejudicial.

Jeffries argues that Csapo's testimony concerning Pierce Transit's vulnerable clientele and about

the sheriff's department's strategy of "broken windows" policing to protect vulnerable bus riders

from being "preyed" upon was irrelevant and inadmissible. 3 VRP at 80. He also contends that

this testimony encouraged the jury to convict Jeffries in order to deter future lawbreaking rather

than based on guilt. We disagree.

"The decision to object, or to refrain from objecting even if testimony is not admissible,

is a tactical decision not to highlight the evidence to the jury. It is [generally] not a basis for

finding counsel ineffective." *State v. Kloepper*, 179 Wn. App. 343, 355, 317 P.3d 1088 (2014).

To prove the failure to object rendered counsel ineffective, the defendant must show that not

objecting fell below prevailing professional norms, the proposed objection would likely have

been sustained, and the result of the trial would have been different if the evidence had not been

admitted. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). To prevail on

this issue, the defendant must rebut the presumption that counsel's failure to object can be

characterized as legitimate trial strategy or tactics. *Id*. Where the defendant cannot establish on

the record the reasons for counsel's decision, the defendant has not met their burden and the

appropriate avenue for presenting additional evidence is through a personal restraint petition.

*State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018).

Jeffries points to *State v. Ramos*, 164 Wn. App. 327, 338, 263 P.3d 1268 (2011), which

relied on *United States v. Solivan*, 937 F.2d 1146, 1153 (6th Cir. 1991). In *Solivan*, the Sixth

Circuit explained it is improper for a prosecutor to "urge jurors to convict a criminal defendant in

order to protect community values, preserve civil order, or deter future lawbreaking" because it

risks a conviction "for reasons wholly irrelevant to [the defendant's] own guilt or innocence."

*Solivan*, 937 F.2d at 1153.

Jeffries's reliance on *Ramos* and *Solivan* is misplaced. Csapo's testimony provided

background establishing that he was performing his official duties, which was relevant to the

obstruction charge. Under RCW 9A.76.020(1), "[a] person is guilty of obstructing a law

enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement

officer in the discharge of his or her official powers or duties." Csapo's testimony established

that he was discharging his "official powers or duties" when he responded to the call from Pierce

13

Transit reporting a disturbance. During trial, Csapo testified that he had been assigned to the Pierce Transit patrol division for the past six years, and the division's primary focus was the bus system in and around Pierce County, with an emphasis on the safety of employees and passengers. Csapo's testimony was relevant to show the sheriff department's approach to handling reported disturbances on Pierce Transit buses and why Csapo was inclined to issue Jeffries a citation.

Under these circumstances, it was a legitimate trial tactic to decline to object to this testimony. An objection based on *Ramos* and *Solivan* would not have been sustained, and counsel likely legitimately concluded that it was best not to focus the jury's attention on this testimony. Jeffries's ineffective assistance of counsel claim on this ground fails.

B.       Failure to Object to Admission of the Order Establishing Jeffries's Conditions of Release

Jeffries argues he received ineffective assistance of counsel because his counsel failed to object to the admission of the order establishing his conditions of release or insist on redaction of some conditions. We disagree.

At trial, the State presented an order that established Jeffries's conditions of release, and the trial court admitted the order without objection. The order provided, among other things, that Jeffries "shall not possess weapons or firearms," "shall not consume or possess alcohol or non-prescription drugs," and shall have "[n]o hostile contact with law enforcement." Ex. 6. Jeffries argues counsel should have objected or at least sought redaction of this exhibit because these conditions were inadmissible under ER 401 and 402 because they were irrelevant to the crimes charged. He also argues that the probative value of the order was substantially outweighed by the danger of unfair prejudice under ER 403, and the conditions of release specified in the order

encouraged the jury to find that Jeffries was violent, had a drinking problem, and was hostile toward law enforcement.

However, the State offered this exhibit to show that the trial court released Jeffries while requiring that he appear personally in court on a certain date, an essential element of bail jumping. The order also reflected that Jeffries had signed it. For those reasons, the order was relevant under ER 401 and 402. The probative value of the order for purposes of proving elements of bail jumping also outweighed any prejudicial effect under ER 403.

To the extent Jeffries argues that counsel was deficient for his failure to seek redaction of specific conditions of release, this argument also fails. The order includes several conditions as standard options for the trial court to adopt by checking a box, including the condition requiring the defendant not to possess firearms and not to consume alcohol while out on bail. The condition of release requiring Jeffries to avoid altercations with law enforcement is not surprising given the circumstances surrounding his crime. And there may have been good reasons for counsel to avoid redaction, including that redaction might cause the jury to speculate about what information was being withheld. On this record, we are unable to deduce whether that supposition—or any others—is correct. *See Linville*, 191 Wn.2d at 525. Jeffries has failed to meet his burden to show counsel was deficient for failing to seek redaction of the order.

C.      Failure to Investigate a Diminished Capacity Defense

Jeffries argues he received ineffective assistance of counsel because counsel failed to reasonably investigate his ability to assert a diminished capacity defense. This argument appears to be premised on the fact that counsel did not obtain an expert evaluation before deciding not to pursue this defense.

15

"A diminished capacity defense requires evidence of a mental condition [that] prevents the defendant from forming the requisite intent necessary to commit the crime charged." *State v. Tilton*, 149 Wn.2d 775, 784, 72 P.3d 735 (2003); *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001). Diminished capacity is not a true affirmative defense, but an argument that a specific element of the offense—the defendant's mental state—has not been proved. *State v. Gough*, 53 Wn. App. 619, 622, 768 P.2d 1028 (1989). The failure of defense counsel to present a diminished capacity defense is both deficient and prejudicial when the facts supported the defense. *Tilton*, 149 Wn.2d at 784.

During Jeffries's first round of proceedings, Jeffries informed the trial court and defense counsel that he had been diagnosed with PTSD, which he claimed impacted his ability to form the requisite mental state for the crimes charged. He requested a competency evaluation under chapter 10.77 RCW. The trial court considered whether or not to hold a hearing under chapter 10.77 RCW but denied the motion for an evaluation because it found Jeffries was competent to stand trial. The trial court advised Jeffries, to the extent he wanted to pursue a diminished capacity defense, that he should discuss it with defense counsel. The court noted, however, that if Jeffries was under the influence of drugs or alcohol, "you probably don't get a diminished capacity instruction." 1 VRP at 9.

Here, Jeffries has not shown that counsel was deficient. Counsel was aware of Jeffries's asserted PTSD diagnosis. The record does not disclose whether Jeffries's PTSD impaired his ability to form the requisite intent to commit bail jumping. Equally important, the record does not disclose the reason why Jeffries's counsel elected to not pursue a diminished capacity defense. The decision could have been made for legitimate strategic or tactical reasons.

16

Moreover, in Jeffries's subsequent proceeding on his second charge of bail jumping, his newly appointed defense counsel advised the trial court that he did not believe Jeffries had "a factual or legal basis to" assert a diminished capacity defense. 4 VRP at 3. And the trial court found Jeffries competent, based on a forensic psychological report, and allowed him to waive his right to counsel. These later determinations show that it is highly unlikely that Jeffries's prior counsel's decision not to seek a diminished capacity evaluation was deficient.

Jeffries has failed to show that his counsel's performance was deficient. His ineffective assistance claim therefore fails.

IV. LEGAL FINANCIAL OBLIGATIONS

Jeffries argues that the sentencing court erred when it ordered him to pay a $200 criminal filing fee and a $100 DNA collection fee. The State agrees.

In 2018, the legislature amended former RCW 36.18.020(2)(h) to prohibit trial courts from imposing a $200 criminal filing fee on defendants who are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 7. The legislature also amended RCW 43.43.7541, which now requires imposition of the DNA collection fee "unless the state has previously collected the offender's DNA as a result of a prior conviction." RCW 43.43.7541; LAWS OF 2018, ch. 269, § 18. In *State v. Ramirez*, our Supreme Court held that these amendments apply prospectively to indigent defendants whose direct appeal is not yet final. 191 Wn.2d 732, 747-50, 426 P.3d 714 (2018).

The trial court found Jeffries indigent upon sentencing. In light of this finding and the State's concession, we remand to the trial court to strike the criminal filing fee. The State's records show that Jeffries's DNA had been previously collected and was on file with the

No. 50636-0-II

Washington State Patrol. Thus, we also direct the trial court to strike the DNA collection fee. The trial court should also strike any accrued interest related to the imposition of these fees.

CONCLUSION

We affirm Jeffries's convictions. The trial court properly instructed the jury on the elements necessary to convict on bail jumping, and Jeffries has not shown his counsel provided ineffective assistance. We remand for the trial court to strike the criminal filing fee, the DNA collection fee, and any interest associated with those fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, J.

Maxa, C.J.